**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARY SPICKLER,<br>Plaintiff<br><br>v.<br><br>RIGHTSIZE FACILITY PERFORMANCE, LLC and MASON AWTRY,<br>Defendants | No. 24 CV 5083<br><br>Judge Jeremy C. Daniel |

## ORDER

The defendants' motion to dismiss [13] is denied as to Count I and granted as to Counts II and III. Any amended complaint is due on or before March 11, 2025. The defendant shall respond (whether to the complaint or to an amended complaint) on or before April 1, 2025.

## STATEMENT

Plaintiff Mary Spickler filed this action against her former employer, Defendant Rightsize Facility Performance, LLC, and its managing member, Defendant Mason Awtry under Title VII of the Civil Rights Act ("Title VII"). (R. 1 ¶¶ 4–8.)[1]

The following description of the factual allegations underlying Spickler's claims is drawn from the complaint and is presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). While the complaint does not describe Spickler's job at Rightsize, it provides that Awtry had significant control and supervision over Spickler's work. (*Id.* ¶ 16.) The complaint alleges a sexually hostile work environment, setting forth multiple instances of Awtry and others making unwanted sexual advances toward Spickler. (*See, e.g.*, *id.* ¶ 15.) One specific instance of harassment described in the complaint allegedly occurred on or around June 2, 2022, while the plaintiff, Awtry, and other employees attended the grand re-opening of Rightsize's showroom in Detroit, Michigan. (*See id.* ¶¶ 16(m)–(o), 47.) Spickler asserts that she confronted Awtry about explicit comments he had allegedly made about her and instructed him to stop them, but that he responded by scoffing at the suggestion, saying that "he does not sleep with [Spickler] because she's

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

a hard worker and good employee," but that "[i]f [she] weren't my employee, I'd fuck the shit out of [her]." (*Id.* ¶ 16(n).) In response, Spickler advised Awtry not to speak to her in that manner, instructed him to stop the rumors, and walked away. (*Id.*)

Afterward, Rightsize employees were invited to, and expected to attend, a bar to celebrate the showroom reopening; several of them then went to the house of another employee of Rightsize's Detroit office. (*Id.*) During this event, Spickler allegedly hit her head, and became unconscious; she did not reawake until next morning, when she found herself in the hotel room that she was sharing with another woman employee. (*Id.* ¶ 16(o).) She asserts that she awoke "confused, delirious, and in substantial pain" and found herself "naked with a gash above her eye and bruising on her head and lower body." (*Id.*) Allegedly no one in attendance the night before could explain how Spickler got from the employee's home to the hotel or how long she was unconscious. (*Id.*) But later that day, upon encountering Awtry, he allegedly told Spickler that "last night was great." (*Id.*) On information and belief, Spickler claims that Awtry was referring to sexually assaulting her the night before while she was unconscious. (*Id.*) Spickler filed her complaint in this matter on June 18, 2024. (*See generally id.*) Sometime thereafter, Rightsize's attorney contacted Spickler's former attorney and made "a veiled threat to enforce her noncompete agreement." (*Id.* ¶ 40.) Rightsize does not generally enforce its noncompete agreements and Spickler asserts that it would not have, but for Spickler's lawsuit. (*Id.* ¶¶ 41–42.)

The defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself could these things have happened, not did they happen." *Id.*

**Count One: Title VII Sex Discrimination**[2]

"A Title VII plaintiff must file her suit within 90 days from the date the EEOC 'gives notice' of her right to sue." *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001) (quoting 42 U.S.C. § 2000e–5(f)(1)). But "a plaintiff should not lose the right to sue because of fortuitous circumstances or events beyond his or her control which delay

[2] Jurisdiction over Counts I and II is proper under 28 U.S.C. § 1331.

receipt of the EEOC's notice." *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984). Accordingly, the Seventh Circuit has "consistently held (as have [its] sister circuits) that the 90-day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC." *DeTata*, 632 F.3d at 967. The actual-receipt date does not apply, however, "when the claimant does not receive the notice in a timely fashion due to her own fault[.]" *Bobbitt*, 268 F.3d at 538.

The defendants argue that Count I must be dismissed as untimely because the complaint does not allege when Spickler received her right-to-sue letter and, in the absence of such an allegation, Spickler must be presumed to have received her right-to-sue letter seven days after mailing. (R. 13 at 5 (citing *Bobbitt*, 268 F.3d at 538 ("The law presumes timely delivery of a properly addressed piece of mail.").) Accordingly, the defendants reason that the complaint should have been filed on or before June 10, 2024, which is ninety days after March 19th and seven days after March 12th, the date of issue on the right-to-sue letter attached as an exhibit to the motion to dismiss. (*Id.*; *see also* R. 19.)[3] However, Spickler's attorneys attached declarations to her response brief stating that the right to sue letter was received on March 20th. (R. 21-1; R. 20-2.) A plaintiff may provide further allegations in a response to defeat a motion to dismiss, as long as the new elaborations are consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). That is what Spickler's attorneys did here, and those allegations are consistent with the complaint's allegations that Spickler timely filed her lawsuit. (*See* R. 1 ¶ 4 ("[Spickler] filed a charge of discrimination with the EEOC, received a right-to-sue letter from the EEOC, and brought this lawsuit within the applicable time period.")). Viewing these additional facts in the light most favorable to Spickler, they support an inference that the complaint was timely filed. Therefore, Count I is not subject to dismissal on this basis at this time.

The Court notes that the defendants seek to reserve their time-bar argument. The Court will allow this; if they so choose, the defendants may re-assert their time-bar argument at a later stage.

**Count Two: Title VII Retaliation**

"To make out a *prima facie* claim of retaliation under Title VII . . . , [Spickler] must allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection exists between the two." *Jordan v. Whelan Sec. of Ill., Inc.*, 30 F. Supp. 3d 746, 753 (N.D. Ill. 2014). The defendants argue that Count II should be dismissed because the plaintiff fails to allege an adverse action as a matter of law. (R. 13 at 9.)

---

[3] Although not attached to the complaint, the Court is free to consider Spickler's right-to-sue letter, which is "critical to the complaint and referred to in it[.]" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013); (*see* R. 1 ¶ 4.)

"For Title VII retaliation purposes, a materially adverse action "need not be one that affects the terms and conditions of employment, but it 'must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'"" *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (citations omitted). In other words, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000). An adverse action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017).

> Such actions include: (1) diminishing an 'employee's compensation, fringe benefits, or other financial terms of employment,' including termination; (2) reducing long-term career prospects 'by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted'; and (3) changing 'the conditions in which [an employee] works . . . in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment.

*Id.* (citation omitted). "Unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions." *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (emphasis in original). Additionally, "an employer's unfulfilled 'threats of unspecified disciplinary action' d[oes] not constitute adverse actions, though such threats 'may well be relevant evidence of retaliatory intent behind a more concrete adverse action." *Lewis*, 909 F.3d at 868 (citation omitted).

Spickler cites no law in support of her position that the Court should deny the defendants' motion to dismiss Count II. (R. 20 at 2–3.) This deficiency alone is sufficient basis to grant the motion to dismiss. *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995). Even so, the only adverse action alleged in the complaint is that the defendants contacted Spickler's then-counsel with "a veiled threat to enforce her noncompete agreement," but this allegation lacks any concrete, tangible consequence. (R. 1 ¶ 40.) Because this is nothing more than a contention of an unfulfilled threat, this claim fails. Spickler's argument that this result thwarts the very purpose for Title VII's "prohibition against retaliation and would create the perverse incentive to engage in efforts to undermine the statute's protections" is unavailing, (R. 20 at 3); "[t]he provision 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Lewis*, 909 F.3d at 868.

The Court next considers whether to grant Spickler's request for leave to amend. (R. 20 at 3.) Because the time period for amendment as of right has expired, Spickler may only do so with written consent or the Court's leave. Fed. R. Civ. P. 15(a). Courts should freely give leave to amend when justice so requires." *Runnion ex rel. v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (citation omitted). Leave to amend is properly denied, however, where amendment would be futile, *id.* at 520, or would cause "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court grants Spickler leave to file an amended complaint.

**Count Three: Battery**[4]

The defendants argue that Count III should be dismissed for two reasons. (R. 13 at 10–11.) First, the defendants argue that the complaint is time-barred as to any Michigan state-law battery claim because it is subject to a two-year statute of limitations; the allegations turn on events that allegedly occurred on June 2 and 3, 2022, but the complaint was filed on June 18, 2024. (*Id.* at 10 (citing Mich. Comp. Laws § 600.5805(3)).) The Court agrees. (*Compare* R. 1 ¶¶ 16(m)–(o), 47, *with* R. 20 at 3 (describing events occurring June 2, 2022 and "the following day" as the basis for Count III).) Spickler seeks leave to amend to "add more detail surrounding the events." (R. 20 at 3.) But adding detail to time-barred allegations is futile and so, this request is denied except as to any factual allegations supporting an inference that a battery occurred within the limitations period.

[4] The complaint alleges subject-matter jurisdiction over Count III pursuant to the Court's authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). (R. 1 ¶ 2.) The complaint further alleges that the claim arises under Michigan state law because the parties were located in Detroit, Michigan when the alleged offense occurred. (*Id.* ¶ 47.)

Second, the defendants argue that the complaint should be dismissed to the extent it supports an inference that Spickler is seeking damages for criminal sexual conduct, an action which has a statute of limitation of ten years, *see* Mich. Comp. Laws 600.5805(6), because it is devoid of plausible factual support and impermissibly relies upon information and belief allegations. (R. 13 at 11.) But the complaint itself does not explicitly mention criminal sexual conduct. Spickler's response brief also does not respond to the defendant's assertion that she is moving to recover damages sustained because of criminal sexual conduct, (*see* R. 20 at 3–4.) nor does it set forth what elements are required to plausibly allege entitlement to damages for criminal sexual conduct; it is not the Court's responsibility to make Spickler's legal arguments for her. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants."). The motion to dismiss Count III is accordingly granted.

Date: February 18, 2025

JEREMY C. DANIEL
United States District Judge