**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY SPICKLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | |
| RIGHTSIZE FACILITY and MASON AWTRY, | ) | **JURY DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

# AMENDED COMPLAINT

COMES NOW Plaintiff, Mary Spickler, by and through counsel, Beau B. Brindley, and hereby makes the following allegations against Defendants, RIGHTSIZE FACILITY and MASON AWTRY:

## JURISDICTION AND VENUE

1. Amended Count One contains an action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., as amended. This Court has jurisdiction under and by virtue of 28 U.S.C §§ 1331 and 1343.

2. Amended Count Two[1] is so related to the claim in Amended Count One that they form part of the same case or controversy under Article III. This Court has supplemental jurisdiction over Amended Count Two by virtue of 28 U.S.C § 1367(a).

3. Venue is founded in this judicial district upon 28 U.S.C. § 1391 as a substantial part of the acts complained of arose in this district.

[1] Plaintiff is no longer pursuing the claim alleged in Count Two of the original complaint and has renumbered the counts accordingly.

4. Plaintiff, MARY SPICKLER, has fully complied with the procedural requirements of Title VII. She filed a charge of discrimination with the EEOC, and the undersigned's office received notice of Plaintiff's right to sue (Exhibit A) from the EEOC on March 20, 2024. This lawsuit was brought within the applicable time period after the right to sue letter was received. Exhibit B (Declaration of Maria Almazan); Exhibit C (Declaration of Edward McDavid)).

## PARTIES

5. At all times herein mentioned, Plaintiff, MARY SPICKLER (hereinafter "SPICKLER" or "Plaintiff"), was employed by the Defendant RIGHTSIZE FACILITY.

6. At all times herein mentioned, Defendant, RIGHTSIZE FACILITY (hereinafter "Rightsize"), was a limited liability company duly organized, existing, and operating within the jurisdiction of this Court.

7. RIGHTSIZE FACILITY is an employer subject to suit under Title VII in that Defendant is in an industry affecting commerce and had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year.

8. Defendant, Mason Awtry, is the Chief Executive Officer of RIGHTSIZE, and is an individual domiciled within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

9. Plaintiff worked for Rightsize.

10. Plaintiff is a female.

11. Plaintiff began employment with Rightsize on or about 2018.

12. At all material times, Plaintiff performed her job according to her employer's legitimate expectations.

13. Mason Awtry is the Chief Executive Officer ("CEO") of Rightsize.

14. Awtry had significant control and supervision over Plaintiff's work.

15. Beginning on or about February 5, 2018, Plaintiff was subjected to continual sexual harassment and a sexually hostile work environment from Awtry and others.

16. The following are examples of sexual harassment Plaintiff incurred during the course of her employment with Rightsize:

a. Shortly after Plaintiff began working at Rightsize, Awtry commented on Plaintiff's tattoos. While doing so, Awtry showed Plaintiff a picture of a topless woman with a tattoo outlining her lower breasts and sternum and asked if plaintiff had any tattoos like the one displayed in the picture. Plaintiff recoiled in disgust and told Awtry not to show her such pictures.

b. The day of Rightsize's 2018 holiday work party, Awtry asked Plaintiff if she was planning to bring her boyfriend to the party. Plaintiff responded that she was not planning to bring her boyfriend, as he was not much of a party person. Awtry responded, "great, no boyfriend," and made comments to nearby coworkers to the effect of "wooo, we're getting [Plaintiff] drunk."

c. Awtry often encouraged female employees to drink with him, and favoritism was shown to those who did.

d. The following day, Rachel Deane, the Vice President of Sales at Rightsize, made comments to the effect of "I heard you had quite the time last night" and "you girls are bad." Plaintiff explained that she did not know what Deane was talking about, but Deane would not elaborate on the subject. Instead, Deane accused Plaintiff of playing dumb and made statements to the effect of "you aren't fooling me. I heard it all."

e. Plaintiff later learned that rumors were circulating around the office that she engaged in sexual activity with Awtry and that she had a three-way sexual encounter with Awtry and Awtry's girlfriend. These rumors were false. Upon information and belief, Awtry was the source of the rumors.

f. In April of 2019, Plaintiff learned that another rumor had begun to circulate around the office after an industry event. The new rumor alleged that Plaintiff "hooked up" with Awtry after the event. The rumor was not true. Upon information and belief, Awtry was the source of the rumor.

g. Another industry event in April 2019 was themed "pop stars," and Plaintiff went as Britney Spears. As part of the costume, Plaintiff wore her hair in braided pigtails. Plaintiff and Awtry were getting on the elevator to go to the event. While on the elevator, Awtry pulled on Plaintiff's pigtails, saying "I'd use these; you know what those are for," insinuating that pigtails are for pulling during sex.

h. During a monthly video call with Rightsize's office, an employee from another office was wearing pigtails. Awtry leaned over to Plaintiff and quietly said, "oh look, Mikaela's got handlebars."

i. Awtry would frequently make inappropriate sexual comments during meetings. For instance, on at least one occasion, Awtry stated "why buy the chick when you're getting the blowjobs for free," an unclever take on the saying "why buy the cow when you get the milk for free."

j. On multiple occasions, Awtry referred to Plaintiff as the "honey pot" before and after meetings with clients.

k. Awtry often made comments regarding Plaintiff's physical appearance. For instance, after Plaintiff went through a breakup, Awtry commented that Plaintiff looked good and lost weight in a good way.

l. Awtry would advise Plaintiff to wear sexually provocative clothing. For instance, Awtry advised Plaintiff and several other female employees that he wanted them to be in the office to meet with a potential new hire who wanted to sit in on their work process. That was not part of Plaintiff's employment duties, and Plaintiff advised Awtry that she did not agree to the proposed meeting. Awtry responded that he needed Plaintiff and another female employee to be there because they had to be the "pretty faces" for the twenty-something male who was applying for the sales position. Awtry further instructed Plaintiff to "dress like a designer" for the meeting. Plaintiff inquired if he wanted her to cover up her tattoos. Awtry responded, "No, the opposite. Have your tattoos showing and look designer." Plaintiff inquired what Awtry meant by "look designer," and Awtry instructed Plaintiff to wear a black leather dress she owned, fishnet stockings, and boots. Plaintiff did not want to comply with the instruction, and felt objectified and sexualized, but she did comply out of fear that adverse action would be taken if she did not.

m. In June 2022, Plaintiff went the grand re-opening of Rightsize's Detroit, Michigan showroom. Upon her arrival in Detroit, Plaintiff joined other coworkers for a glass of wine at the hotel bar. When they were finished, one of the employees, Kristi Thompson, paid the tab using her company card. Tami Mirabella (the Vice President of Design and Project Management for Rightsize and Plaintiff's direct

supervisor), upon seeing that Kristi had a company card, asked "How many blowjobs did you have to give [Awtry] to get that?" Thompson denied that she had sexual relations with Awtry. Mirabella responded, "Sure you did. That's why you're the only one with a company card. We all know [Plaintiff]'s slept with him." Plaintiff immediately denied the allegation and asked Mirabella where she had heard the rumor. Mirabella said it was common knowledge at the company that Plaintiff sleeps with Awtry. Plaintiff explained that the rumors were false and that the wants them to stop. Thompson later confirmed that she had heard various rumors about sexual encounters between Plaintiff and Awtry circulating around the office.

n. The next day, Plaintiff confronted Awtry about the rumors and explained to him that she needed them to stop. Plaintiff told Awtry that he needed to dispel the rumors. Awtry scoffed at the suggestion, and he said that he does not sleep with Plaintiff because she's a hard worker and good employee. Awtry clarified his statement, adding, "If you weren't my employee, I'd fuck the shit out of you." Plaintiff advised Awtry not to speak to her in that manner, instructed him to stop the rumors, and walked away.

o. After the showroom event, employees were invited to, and expected to attend, a bar to celebrate the showroom reopening. After the bar, several employees went to the house of another employee of Rightsize's Detroit office. While at the Detroit home, Plaintiff fell and hit her head, becoming unconscious.

p. The next morning, Plaintiff awoke in the hotel room that she and another female employee were sharing. When she awoke, Plaintiff was naked, with a gash above

her eye and bruising on her head and lower body. Bruising on Plaintiff's lower back was consistent with bruising that one would receive from being forcefully grabbed during sexual intercourse. Plaintiff also experienced pain in her groin area that was consistent with rough sexual intercourse and inconsistent with the injuries that would be expected from a fall.

q. Plaintiff was confused, delirious, and in substantial pain, but she still went to work at Rightsize's Detroit showroom office. Nobody from the company who was present the previous night was able to explain how Plaintiff got from the employee's home to the hotel or how long Plaintiff was unconscious. Later that day, as employees were leaving, Plaintiff encountered Awtry, who whispered to Plaintiff, "You were great last night." Plaintiff understood this statement as Awtry referring to nonconsensual sexual intercourse he engaged in with Plaintiff the previous night while Plaintiff was unconscious and could not consent.

## COUNT ONE
## SEXUAL HARRASMENT IN VIOLATION OF TITLE VII
## (RIGHTSIZE FACILITY)

17. Plaintiff realleges the foregoing paragraph as though fully set forth herein.

18. Plaintiff, a female, is a member of a protected class.

19. During the course of her employment with Rightsize, Plaintiff was repeatedly subjected to sexual harassment and/or a sexually hostile work environment, as described above.

20. During the course of her employment with Rightsize, Plaintiff was subjected to severe and pervasive sexual harassment which altered the conditions of the Plaintiff's employment and created an abusive working environment.

21. Plaintiff found the foregoing acts to be offensive, unwelcome, and unwanted.

22. The foregoing acts were in fact offensive, unwelcome, and unwarranted.

23. The foregoing sexual harassment unreasonably interfered with Plaintiff's ability to perform her job and/or created an intimidating, hostile, and/or offensive work environment.

24. Mason Awtry, Rightsize's CEO, had significant control and supervision over Plaintiff's work and is indisputably within the class of Rightsize's officials who may be treated as Rightsize's proxy.

25. Rachel Deane, the Vice President of Sales at Rightsize, had significant control and supervision over Plaintiff's work and is indisputably within the class of Rightsize's officials who may be treated as Rightsize's proxy.

26. Tami Mirabella, the Vice President of Design and Project Management for Rightsize, was Plaintiff's direct supervisor and is indisputably within the class of Rightsize's officials who may be treated as Rightsixe's proxy.

27. Awtry exhibited a pattern and practice of sexual harassment against female employees.

28. Awtry and Rightsize created an environment where reporting sexual harassment was discouraged, as female employees were made to fear that adverse action would be taken against those who reported Awtry's harassment.

29. Rightsize took no action to prevent or remedy known sexual harassment.

30. The ongoing discriminatory harassment Plaintiff experienced as an employee of Defendant was so intolerable that it caused Plaintiff to resign.

31. A reasonable person faced with the same discriminatory harassment would have resigned.

32. The ongoing and pervasive harassment caused plaintiff significant emotional distress, anxiety, and depression which manifested as, *inter alia*, headaches, lightheadedness, dizziness, rapid heartbeats, body aches, panic attacks, night terrors, memory problems, and sleep disorders.

33. Plaintiff continues to suffer from the emotional and psychological effects of the discriminatory harassment she suffered during her employment with Rightsize.

34. Defendant's employees, including Awtry, did not seek medical attention for the injuries Plaintiff suffered on or about June 2, 2022 when she hit her head and was rendered unconscious at a company event.

35. Defendant's employees failed to seek medical attention because of Plaintiff's status as a female and Awtry's desire to utilize her unconscious state as an opportunity to perform unwanted sex acts on Plaintiff.

36. Rather than seek medical attention, Rightsize's employees sought to cover up and hide Plaintiff's injuries.

37. The decision to cover up and hide plaintiff's injuries was due to her status as a female and the need to cover up Awtry's performance of unwanted sex acts on her while injured and unconscious.

38. The failure to seek medical attention resulted in the aggravation of Plaintiff's injuries.

39. Plaintiff suffered severe brain trauma, for which she needs ongoing medical treatment.

40. Plaintiff's injuries have resulted in severe neurological problems, from which Plaintiff may not fully recover.

**COUNT TWO**
**CRIMINAL SEXUAL ASSAULT**
**IN VIOLAITON OF MICHIGAN LAW**
**(AWTRY)**

41. Plaintiff realleges paragraphs 1-38 as though fully set forth herein.

42. On or about June 3, 2023, Defendant Awtry engaged in sexual penetration, as defined in MCL § 750.520a(r) while Plaintiff was unconscious and unable to consent.

43. Plaintiff was mentally incapable, mentally incapacitated, and physically helpless at the time of the sexual penetration.

44. Defendant Awtry knew Plaintiff was mentally incapable, mentally incapacitated, or physically helpless.

45. Defendant Awtry's conduct caused personal injury to Plaintiff in the form of bodily injury and mental anguish.

46. Defendant Awtry was abetted by other employees of Rightsize, who assisted Defendant Awtry in covering up his conduct and refused to answer questions about how Plaintiff returned to the hotel or whether Defendant Awtry was present.

47. Defendant Awtry is civilly liable for criminal sexual assault under Michigan law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MARY SPICKLER, by and through her attorney, Beau B. Brindley, requests the following relief:

A. With respect to Amended Count One:

   i. That Plaintiff be granted general and compensatory damages in an amount to be determined at trial

   ii. That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

   iii. That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

   iv. That the Court grant such other and further relief as the Court may deem just or equitable.

B. With respect to Amended Count Two:

i. That Plaintiff be granted general and compensatory damages in an amount to be determined at trial

ii. That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

iii. That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

iv. That the Court grant such other and further relief as the Court may deem just or equitable.

Respectfully submitted,

Beau B. Brindley

/s/ Beau B. Brindley
Attorney for Plaintiff

LAW OFFICES OF BEAU. B. BRINDLEY
53 West Jackson Boulevard
Suite 1410
Chicago, Illinois 60604
(312) 765-8878

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

Respectfully submitted,

Beau B. Brindley

/s/ Beau B. Brindley
Attorney for Plaintiff

LAW OFFICES OF BEAU. B. BRINDLEY
53 West Jackson Boulevard
Suite 1410
Chicago, Illinois 60604
(312) 765-8878