**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARY SPICKLER,<br>Plaintiff<br><br>v.<br><br>RIGHTSIZE FACILITY PERFORMANCE, LLC and MASON AWTRY,<br>Defendants | No. 24 CV 5083<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendant's motion to dismiss Count II of the amended complaint [34] is denied. The defendant shall respond to the amended complaint on or before June 17, 2025.

**STATEMENT**

Plaintiff Mary Spickler filed this action against her former employer, Defendant Rightsize Facility Performance, LLC ("Rightsize"), and its managing member, Defendant Mason Awtry, under Title VII of the Civil Rights Act ("Title VII") and Michigan state law. (R. 1 ¶¶ 4–8.)[1] The original complaint included claims of Title VII sex discrimination, Title VII retaliation, and battery. (*Id.* ¶¶ 1–2.) The Court previously denied the defendants' motion to dismiss with respect to the Title VII sex discrimination claim but granted the motion with respect to the Title VII retaliation and battery claims. (R. 22.) The plaintiff filed an amended complaint[2] bringing a

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate. For documents filed under seal, the Court cites the sealed version of the documents while attempting not to reveal any information that could be reasonably deemed confidential. Confidential information is discussed to the extent necessary to explain the path of the Court's reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

[2] On March 18, 2025, Mr. Brindley filed a motion for an extension of time to file an amended complaint. (R. 25.) In that motion, Mr. Brindley claimed a threat had been made against the life of one of his incarcerated clients. (*Id.* at 1.) Mr. Brindley further claimed "exigent circumstances" existed and that "[a]n emergency motion must be completed in an effort to thwart a serious threat of death that is presently imminent." (*Id.*) The Court, having previously cautioned that it would not further extend the deadline, required Mr. Brindley to

claim under Michigan state law for damages sustained because of criminal sexual conduct (Count II).[3] (R. 28 ¶¶ 2, 41–47.) The defendants now move to dismiss Count II of the amended complaint. (R. 34.)

The following description of the facts is from the plaintiff's amended complaint and is presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Because the defendants are moving to dismiss Count II, the Court reviews the factual allegations relevant to Count II only. Spickler was employed by Rightsize beginning in 2018. (R. 28 ¶ 11.) Awtry was the CEO of Rightsize and supervised Spickler. (*Id.* ¶¶ 13–14.) Spickler alleges Awtry sexually harassed her during her employment with Rightsize by, for example, showing Spickler "a picture of a topless woman with a tattoo outlining her lower breasts and sternum and ask[ing] if [Spickler] had any [similar] tattoos" (*id.* ¶ 16(a)), commenting on Spickler not bringing a boyfriend to the 2018 holiday party (*id.* ¶ 16(b)), circulating rumors about Spickler having sex with Awtry (*id.* ¶¶16(e)–(f)), and commenting on Spickler's pigtails, "I'd use these; you know what those are for," allegedly "insinuating that pigtails are for pulling during sex" (*id.* ¶ 16(g)). In June 2022 during a company event, Spickler confronted Awtry regarding a rumor circulating among the office that the two had sex. (*Id.* ¶¶ 16(m)–(n).) Awtry allegedly told Spickler, "If you weren't my employee, I'd fuck the shit out of you." (*Id.* ¶ 16(n).)

---

substantiate his claim. (R. 26.) In a sealed filing, Mr. Brindley explained that, after a flurry of events that occurred in mid-March, he expected to file an emergency motion in his incarcerated client's case on or about March 20, 2025. (R. 27.) Based on Mr. Brindley's representation, the Court granted the plaintiff's motion for an extension of time. (R. 29.) The Court also required Mr. Brindley to substantiate his representations concerning the emergency motion that necessitated the extension. (*Id.*) When Mr. Brindley failed to comply with the Court's order, the Court required plaintiff's counsel to comply on or before April 11, 2025. (R. 33.) The Court received that filing from plaintiff's counsel on April 14, 2025, and has since reviewed the docket in Mr. Brindley's incarcerated client's case. Mr. Brindley did not file anything in that case in March 2025, which belies the claims of exigency. Certainly, things could have happened of which this Court is not aware; but it would seem prudent that counsel would bring those things to the Court's attention. Curiously, he filed a status report in that case on April 11, 2025, the same day this Court required Mr. Brindley to substantiate his claims. This series of events concerns the Court sufficiently that the Court finds it necessary to remind Mr. Brindley of his duty of candor toward the Court and of the requirements of Fed. R. Civ. P. 11.

[3] The amended complaint alleges subject matter jurisdiction over Count II pursuant to the Court's authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). (R. 28 ¶ 2.) The amended complaint further alleges that the claim arises under Michigan state law because the parties were located in Detroit, Michigan when the alleged offense occurred. (*Id.* ¶¶ 16(m)–(q).)

Later that night, Spickler attended a bar with other Rightsize employees and went to an employee's home afterward.[4] (*Id.* ¶16(o).) While at the home, Spickler "hit her head, becoming unconscious." (*Id.*) The next morning Spickler awoke in the hotel room she was sharing with another female Rightsize employee. (*Id.* ¶ 16(p).) Spickler "was naked, with a gash above her eye and bruising on her head and lower body. [The] bruising on [Spickler's] lower back was consistent with bruising that one would receive from being forcefully grabbed during sexual intercourse. [Spickler] also experienced pain in her groin area that was consistent with rough sexual intercourse . . . ." (*Id.*) Awtry whispered to Spickler later that day, "You were great last night."[5] (*Id.* ¶16(q).)

The defendants move to dismiss Count II of the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoted source omitted). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

The defendants first argue Count II should be dismissed because the plaintiff "abandoned her criminal sexual assault claim against Awtry by failing to address it in response to defendants' [first] motion to dismiss." (R. 34 at 5.) The plaintiff's

[4] The amended complaint alleges only that "employees were invited to, and expected to attend, a bar," and that "several employees went to the house of another employee." (R. 28 ¶ 16(o).) It does not specifically allege that Spickler attended these events. However, it is reasonable to infer from the allegations that she did.

[5] The original complaint instead alleges Awtry stated, "Last night was great." (R. 1 ¶ 16(o).) The defendants ask the Court to strike the amended allegation because it "flatly contradicts" the allegation in the original complaint. (R. 43 at 7.) The Court denies this request. Generally, "where the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 783 (7th Cir. 2013). "But where the amended allegations flatly contradict the originals and there is no suggestion that the originals were made in error, courts have considered the different complaints together in the interests of justice." *Nance v. NBCUniversal Media, LLC*, No. 16 C 11635, 2018 WL 1762440, at *5 (N.D. Ill. April 12, 2018). But the allegations are not so irreconcilable that that latter must be stricken.

original complaint included a battery claim under Michigan state law. (R. 1 ¶ 51.) The defendants moved to dismiss that claim along with any claim seeking damages for criminal sexual conduct to the extent the plaintiff was bringing such a claim. (R. 13 at 11; R. 22 at 6.) The Court granted the defendants' motion. (R. 22 at 6.) The Court noted that the original complaint "d[id] not explicitly mention criminal sexual conduct," but nonetheless granted the defendants' motion because the plaintiff's "response brief also d[id] not respond to the defendant[s'] assertion that she [wa]s moving to recover damages sustained because of criminal sexual conduct, nor d[id] it set forth what elements are required to plausibly allege entitlement to damages for criminal sexual conduct." (*Id.* (citation omitted).)

The fact that the plaintiff amended her complaint to include this claim after failing to address the issue when first raised is troubling. Though the Court granted leave to amend the complaint, this applied to the plaintiff's Title VII retaliation claim only, not her battery claim. (*See* R. 22 at 5–6.) The Court granted the defendants' motion to dismiss the complaint "to the extent it supports an inference that [the plaintiff] is seeking damages for criminal sexual assault" purely because the plaintiff failed to address the argument. (*Id.*) Raising this issue now makes it appear as though the plaintiff was sandbagging in her response to the first motion to dismiss. "Sandbagging in all its forms has been condemned time and again . . . , and sandbagging can result in the waiver or forfeiture even of constitutional rights." *Minemyer v. R-Boc Representatives, Inc.*, 283 F.R.D. 392, 397 (N.D. Ill. 2012) (citing *Stern v. Marshall*, 564 U.S. 462, 481–82 (2011)); *see also Med. Assurance Co. v. Miller*, No. 8 C 29, 2010 WL 2710607, at *4 (N.D. Ind. July 7, 2010) (describing "sandbagging" as intentionally employing "vague argument, lack of identifiable issues, and dearth of legal support").

The Court would certainly be justified in dismissing Count II of the amended complaint on this basis. "Ordinarily, however, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2019) (collecting cases). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). The Court also recognizes that its order granting the defendant's motion to dismiss the complaint to "to the extent it supports an inference that [the plaintiff] is seeking damages for criminal sexual assault" did not explicitly state whether that dismissal was with prejudice. (*Id.* 22 at 6.) Given the liberal amendment standard and this ambiguity, the Court will not dismiss Count II of the amended complaint based on forfeiture.

The Court next turns to whether the amended complaint sufficiently pleads Count II. The plaintiff alleges in the amended complaint that Awtry "is civilly liable for

criminal sexual assault" under Michigan law.[6] As relevant here, the term "criminal sexual conduct" includes "engag[ing] in sexual penetration[7] with another person and . . . [t]he actor causes personal injury[8] to the victim, and the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.[9]" *Id.* §§ 750.520b(1)(g); *see also id.* § 600.5805(16)(b).

According to the defendants, the amended complaint fails to allege facts showing that Awtry sexually assaulted the plaintiff, let alone that the plaintiff was sexually assaulted at all. (R. 34 at 6–9.) Instead, according to the defendants, the amended complaint is "grounded in speculation alone." (R. 37 at 4.) The Court finds that Count II of the amended complaint sufficiently states a claim.

It is not necessary for the complaint to allege direct evidence that Awtry sexually assaulted the plaintiff; circumstantial evidence, which taken together establish a plausible claim, will do. *See Cosby v. Rodriguez*, 711 F. Supp. 3d 983, 1005 (N.D. Ill. 2024) (noting "[b]oth direct and circumstantial evidence are permissible" at the motion to dismiss stage). The amended complaint alleges the plaintiff was unconscious, awoke naked, and had pain consistent with rough sexual intercourse. (R. 28 ¶¶ 16(o), (q).) Taken together, and reading the complaint in a light most favorable to the plaintiff, these facts support the plausible inference that somebody had sexual intercourse with the plaintiff while she was unconscious and caused at least some of her injuries. The facts alleged in the amended complaint also support the plausible inference that Awtry was that person. Awtry allegedly made several comments over the course of the plaintiff's employment alluding to possibly having sexual intercourse with her. (*Id.* ¶¶ 16(a)–(b), (e)–(g).) These include statements made both the day before and the day after the alleged assault. (*Id.*¶¶ 16(n), (q).) Accordingly, the complaint states a claim of damages sustained because of criminal sexual conduct under Michigan state law.

Date: May 28, 2025

JEREMY C. DANIEL
United States District Judge

[6] Under Mich. Comp. Laws § 600.5805(6), "[t]he period of limitations is 10 years for an action to recover damages sustained because of criminal sexual conduct."

[7] "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." *Id.* § 750.520a(r).

[8] "'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." *Id.* § 750.520a(n).

[9] "'Physically helpless' means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." *Id.* § 750.520a(m).