**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARY SPICKLER,<br><br>Plaintiff,<br><br>v.<br><br>RIGHTSIZE FACILITY and<br>MASON AWTRY,<br><br>Defendants. | Case No.: 24-cv-5083<br>**Jury Trial Demanded**<br><br>Judge Jeremy C. Daniel<br><br>Magistrate Judge M. David Weisman |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S AMENDED COMPLAINT**

NOW COME Defendants, RIGHTSIZE FACILITY PERFORMANCE OF ILLINOIS, LLC, named incorrectly by Plaintiff as "RIGHTSIZE FACILITY," and MASON AWTRY ("Awtry"), collectively referred to as "Defendants," by and through their attorneys, O'Hagan Meyer LLC, and for their Answer and Affirmative Defenses to Plaintiff's Amended Complaint, state as follows:

## JURISDICTION AND VENUE

1. Amended Count One contains an action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., as amended. This Court has jurisdiction under and by virtue of 28 U.S.C §§ 1331 and 1343.

**ANSWER: Defendants admit that Plaintiff's Amended Count One purports to bring a claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended. Defendants admit that the Court has jurisdiction over the claim that Plaintiff purports to bring in Amended Count One under Title VII by virtue of 28 U.S.C. §§ 1331 and 1343. Defendants deny any liability under Title VII or any other law premised on the allegations in Plaintiff's Amended Complaint.**

2. Amended Count Two is so related to the claim in Amended Count One that they form part of the same case or controversy under Article III. This Court has supplemental jurisdiction over Amended Count Two by virtue of 28 U.S.C § 1367(a).

**ANSWER: Defendants admit only that Plaintiff has alleged that the Court has supplemental jurisdiction over the claim that Plaintiff purports to bring in Amended Count Two under Michigan law by virtue of 28 U.S.C. § 1367(a). Defendants deny any liability premised on the allegations in Amended Count One or Amended Count Two of Plaintiff's Amended Complaint.**

3. Venue is founded in this judicial district upon 28 U.S.C. § 1391 as a substantial part of the acts complained of arose in this district.

**ANSWER: Defendants admit only that Plaintiff has alleged that venue is proper in this district upon 28 U.S.C. § 1391. Defendants deny that any alleged acts purportedly giving rise to Plaintiff's claims occurred—and deny any liability premised on the allegations Plaintiff's Amended Complaint.**

4. Plaintiff, MARY SPICKLER, has fully complied with the procedural requirements of Title VII. She filed a charge of discrimination with the EEOC, and the undersigned's office received notice of Plaintiff's right to sue (Exhibit A) from the EEOC on March 20, 2024. This lawsuit was brought within the applicable time period after the right to sue letter was received. Exhibit B (Declaration of Maria Almazan); Exhibit C (Declaration of Edward McDavid)).

**ANSWER: Defendants admit only that Plaintiff filed a charge of discrimination with the EEOC. Defendants lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegations and conclusions in Paragraph 4 and, therefore, deny them. Defendants deny any liability under Title VII or any other law premised on the allegations in Plaintiff's charge of discrimination or in Plaintiff's Amended Complaint.**

## PARTIES

5. At all times herein mentioned, Plaintiff, MARY SPICKLER (hereinafter "SPICKLER" or "Plaintiff"), was employed by the Defendant RIGHTSIZE FACILITY.

**ANSWER: Defendants admit only that Plaintiff was employed by Rightsize Facility Performance of Illinois, LLC (named incorrectly as "RIGHTSIZE FACILITY") from on or**

**about February 5, 2018 until November 4, 2022, the date on which her voluntary resignation became effective. Defendants deny any remaining allegations in Paragraph 5.**

6. At all times herein mentioned, Defendant, RIGHTSIZE FACILITY (hereinafter "Rightsize"), was a limited liability company duly organized, existing, and operating within the jurisdiction of this Court.

**ANSWER: Defendants admit only that Rightsize Facility Performance, LLC (named incorrectly as "RIGHTSIZE FACILITY") has been duly organized and operating as a limited liability company within the jurisdiction of this Court since November 18, 2018. Defendants deny any remaining allegations in Paragraph 6.**

7. RIGHTSIZE FACILITY is an employer subject to suit under Title VII in that Defendant is in an industry affecting commerce and had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year.

**ANSWER: Defendants admit only that Rightsize Facility Performance, LLC (named incorrectly as "RIGHTSIZE FACILITY") is in an industry affecting commerce and has had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year. The remaining allegation in Paragraph 7 states a legal conclusion for which no response is required, and Defendants respectfully refer all matters of law to the Court. Defendants deny that they are subject to any liability under Title VII or any other law premised on the allegations Plaintiff's Amended Complaint.**

8. Defendant, Mason Awtry, is the Chief Executive Officer of RIGHTSIZE, and is an individual domiciled within the Northern District of Illinois.

**ANSWER: Defendants admit that Awtry is domiciled within the Northern District of Illinois. Defendants deny that Awtry is or was the Chief Executive Officer of Rightsize Facility Performance, LLC (named incorrectly as "RIGHTSIZE FACILITY").**

## <u>FACTUAL ALLEGATIONS</u>

9. Plaintiff worked for Rightsize.

**ANSWER: Defendants admit only that that Plaintiff worked for Rightsize Facility Performance of Illinois, LLC (named incorrectly as "RIGHTSIZE FACILITY") from on or about February 5, 2018 until November 4, 2022, the date on which her voluntary resignation became effective.**

10. Plaintiff is a female.

**ANSWER: Defendants admit that Plaintiff is a woman.**

11. Plaintiff began employment with Rightsize on or about 2018.

**ANSWER: Defendants admit that Plaintiff began employment with Rightsize Facility Performance of Illinois, LLC (named incorrectly as "RIGHTSIZE FACILITY") on or about 2018.**

12. At all material times, Plaintiff performed her job according to her employer's legitimate expectations.

**ANSWER: Defendants deny the allegations in Paragraph 12.**

13. Mason Awtry is the Chief Executive Officer ("CEO") of Rightsize.

**ANSWER: Defendants deny that Awtry is the Chief Executive Officer of Rightsize Facility Performance, LLC (named incorrectly as "RIGHTSIZE FACILITY").**

14. Awtry had significant control and supervision over Plaintiff's work.

**ANSWER: Defendants deny the allegations in Paragraph 14.**

15. Beginning on or about February 5, 2018, Plaintiff was subjected to continual sexual harassment and a sexually hostile work environment from Awtry and others.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 15.**

16. The following are examples of sexual harassment Plaintiff incurred during the course of her employment with Rightsize:

**ANSWER: Defendants deny the allegations in Paragraph 16.**

a. Shortly after Plaintiff began working at Rightsize, Awtry commented on Plaintiff's tattoos. While doing so, Awtry showed Plaintiff a picture of a topless woman with a tattoo outlining her lower breasts and sternum and asked if plaintiff had any tattoos like the one displayed in the picture. Plaintiff recoiled in disgust and told Awtry not to show her such pictures.

**ANSWER: Defendants deny the allegations in Paragraph 16(a).**

b. The day of Rightsize's 2018 holiday work party, Awtry asked Plaintiff if she was planning to bring her boyfriend to the party. Plaintiff responded that she was not planning to bring her boyfriend, as he was not much of a party person. Awtry responded, "great, no boyfriend," and made comments to nearby coworkers to the effect of "wooo, we're getting [Plaintiff] drunk."

**ANSWER: Defendants deny the allegations in Paragraph 16(b).**

c. Awtry often encouraged female employees to drink with him, and favoritism was shown to those who did.

**ANSWER: Defendants deny the allegations in Paragraph 16(c).**

d. The following day, Rachel Deane, the Vice President of Sales at Rightsize, made comments to the effect of "I heard you had quite the time last night" and "you girls are bad." Plaintiff explained that she did not know what Deane was talking about, but Deane would not elaborate on the subject. Instead, Deane accused Plaintiff of playing dumb and made statements to the effect of "you aren't fooling me. I heard it all."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations in Paragraph 16(d) and, therefore, deny them.**

e. Plaintiff later learned that rumors were circulating around the office that she engaged in sexual activity with Awtry and that she had a three-way sexual encounter with Awtry and Awtry's girlfriend. These rumors were false. Upon information and belief, Awtry was the source of the rumors.

**ANSWER: Defendants admit that any alleged rumors that Plaintiff had engaged in sexual activity with Awtry or that she had engaged in a three-way sexual encounter with Awtry and his girlfriend were and are entirely false. Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegation that she learned such**

**alleged rumors were circulating around the office and, therefore, deny it. Defendants deny that Awtry was the source of any such alleged rumors.**

f. In April of 2019, Plaintiff learned that another rumor had begun to circulate around the office after an industry event. The new rumor alleged that Plaintiff "hooked up" with Awtry after the event. The rumor was not true. Upon information and belief, Awtry was the source of the rumor.

**ANSWER: Defendants admit that any alleged rumor that Plaintiff had "hooked up" with Awtry was and is not true. Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegation that she learned such an alleged rumor was circulating around the office and, therefore, deny it. Defendants deny that Awtry was the source of any such alleged rumor.**

g. Another industry event in April 2019 was themed "pop stars," and Plaintiff went as Britney Spears. As part of the costume, Plaintiff wore her hair in braided pigtails. Plaintiff and Awtry were getting on the elevator to go to the event. While on the elevator, Awtry pulled on Plaintiff's pigtails, saying "I'd use these; you know what those are for," insinuating that pigtails are for pulling during sex.

**ANSWER: Defendants deny the allegations in Paragraph 16(g).**

h. During a monthly video call with Rightsize's office, an employee from another office was wearing pigtails. Awtry leaned over to Plaintiff and quietly said, "oh look, Mikaela's got handlebars."

**ANSWER: Defendants deny the allegations in Paragraph 16(h).**

i. Awtry would frequently make inappropriate sexual comments during meetings. For instance, on at least one occasion, Awtry stated "why buy the chick when you're getting the blowjobs for free," an unclever take on the saying "why buy the cow when you get the milk for free."

**ANSWER: Defendants deny the allegations in Paragraph 16(i).**

j. On multiple occasions, Awtry referred to Plaintiff as the "honey pot" before and after meetings with clients.

**ANSWER: Defendants deny the allegations in Paragraph 16(j).**

k. Awtry often made comments regarding Plaintiff's physical appearance. For instance, after Plaintiff went through a breakup, Awtry commented that Plaintiff looked good and lost weight in a good way.

**ANSWER: Defendants deny the allegations in Paragraph 16(k).**

l. Awtry would advise Plaintiff to wear sexually provocative clothing. For instance, Awtry advised Plaintiff and several other female employees that he wanted them to be in the office to meet with a potential new hire who wanted to sit in on their work process. That was not part of Plaintiff's employment duties, and Plaintiff advised Awtry that she did not agree to the proposed meeting. Awtry responded that he needed Plaintiff and another female employee to be there because they had to be the "pretty faces" for the twenty-something male who was applying for the sales position. Awtry further instructed Plaintiff to "dress like a designer" for the meeting. Plaintiff inquired if he wanted her to cover up her tattoos. Awtry responded, "No, the opposite. Have your tattoos showing and look designer." Plaintiff inquired what Awtry meant by "look designer," and Awtry instructed Plaintiff to wear a black leather dress she owned, fishnet stockings, and boots. Plaintiff did not want to comply with the instruction, and felt objectified and sexualized, but she did comply out of fear that adverse action would be taken if she did not.

**ANSWER: Defendants deny the allegations in Paragraph 16(l).**

m. In June 2022, Plaintiff went the grand re-opening of Rightsize's Detroit, Michigan showroom. Upon her arrival in Detroit, Plaintiff joined other coworkers for a glass of wine at the hotel bar. When they were finished, one of the employees, Kristi Thompson, paid the tab using her company card. Tami Mirabella (the Vice President of Design and Project Management for Rightsize and Plaintiff's direct supervisor), upon seeing that Kristi had a company card, asked "How many blowjobs did you have to give [Awtry] to get that?" Thompson denied that she had sexual relations with Awtry. Mirabella responded, "Sure you did. That's why you're the only one with a company card. We all know [Plaintiff]'s slept with him." Plaintiff immediately denied the allegation and asked Mirabella where she had heard the rumor. Mirabella said it was common knowledge at the company that Plaintiff sleeps with Awtry. Plaintiff explained that the rumors were false and that the wants them to stop. Thompson later confirmed that she had heard various rumors about sexual encounters between Plaintiff and Awtry circulating around the office.

**ANSWER: Defendants deny the allegations in Paragraph 16(m).**

n. The next day, Plaintiff confronted Awtry about the rumors and explained to him that she needed them to stop. Plaintiff told Awtry that he needed to dispel the rumors. Awtry scoffed at the suggestion, and he said that he does not sleep with Plaintiff because she's a hard worker and good employee. Awtry clarified his statement, adding, "If you weren't my employee, I'd fuck the shit out of you."

Plaintiff advised Awtry not to speak to her in that manner, instructed him to stop the rumors, and walked away.

**ANSWER: Defendants deny the allegations in Paragraph 16(n).**

o. After the showroom event, employees were invited to, and expected to attend, a bar to celebrate the showroom reopening. After the bar, several employees went to the house of another employee of Rightsize's Detroit office. While at the Detroit home, Plaintiff fell and hit her head, becoming unconscious.

**ANSWER: Defendants deny that employees were invited to or expected to attend a bar to celebrate the showroom reopening. Defendants admit that several employees went to the house of another employee of Rightsize Facility Performance of Illinois, LLC (named incorrectly as "RIGHTSIZE FACILITY"). Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's remaining allegations in Paragraph 16(o) and, therefore, deny them.**

p. The next morning, Plaintiff awoke in the hotel room that she and another female employee were sharing. When she awoke, Plaintiff was naked, with a gash above her eye and bruising on her head and lower body. Bruising on Plaintiff's lower back was consistent with bruising that one would receive from being forcefully grabbed during sexual intercourse. Plaintiff also experienced pain in her groin area that was consistent with rough sexual intercourse and inconsistent with the injuries that would be expected from a fall.

**ANSWER: Defendants admit that Plaintiff awoke in the hotel room that she and another female employee were sharing. Defendants deny that any bruising or pain was consistent with sexual intercourse. Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff's allegations in Paragraph 16(p) and, therefore, deny them.**

q. Plaintiff was confused, delirious, and in substantial pain, but she still went to work at Rightsize's Detroit showroom office. Nobody from the company who was present the previous night was able to explain how Plaintiff got from the

employee's home to the hotel or how long Plaintiff was unconscious. Later that day, as employees were leaving, Plaintiff encountered Awtry, who whispered to Plaintiff, "You were great last night." Plaintiff understood this statement as Awtry referring to nonconsensual sexual intercourse he engaged in with Plaintiff the previous night while Plaintiff was unconscious and could not consent.

**ANSWER: Defendants deny the allegations in Paragraph 16(q).**

## COUNT ONE
### *Sexual Harassment in Violation of Title VII*
### *RIGHTSIZE FACILITY*

17. Plaintiff realleges the foregoing paragraph as though fully set forth herein.

**ANSWER: In response to Paragraph 17, Defendants repeat and reaffirm each and every response to the foregoing paragraphs as if set forth fully herein.**

18. Plaintiff, a female, is a member of a protected class.

**ANSWER: Defendants admit that, as a woman, Plaintiff is a member of a protected class.**

19. During the course of her employment with Rightsize, Plaintiff was repeatedly subjected to sexual harassment and/or a sexually hostile work environment, as described above.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 19.**

20. During the course of her employment with Rightsize, Plaintiff was subjected to severe and pervasive sexual harassment which altered the conditions of the Plaintiff's employment and created an abusive working environment.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 20.**

21. Plaintiff found the foregoing acts to be offensive, unwelcome, and unwanted.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 21.**

22. The foregoing acts were in fact offensive, unwelcome, and unwarranted.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 22.**

23. The foregoing sexual harassment unreasonably interfered with Plaintiff's ability to perform her job and/or created an intimidating, hostile, and/or offensive work environment.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 23.**

24. Mason Awtry, Rightsize's CEO, had significant control and supervision over Plaintiff's work and is indisputably within the class of Rightsize's officials who may be treated as Rightsize's proxy.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 24.**

25. Rachel Deane, the Vice President of Sales at Rightsize, had significant control and supervision over Plaintiff's work and is indisputably within the class of Rightsize's officials who may be treated as Rightsize's proxy.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 25.**

26. Tami Mirabella, the Vice President of Design and Project Management for Rightsize, was Plaintiff's direct supervisor and is indisputably within the class of Rightsize's officials who may be treated as Rightsize's proxy.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 26.**

27. Awtry exhibited a pattern and practice of sexual harassment against female employees.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 27.**

28. Awtry and Rightsize created an environment where reporting sexual harassment was discouraged, as female employees were made to fear that adverse action would be taken against those who reported Awtry's harassment.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 28.**

29. Rightsize took no action to prevent or remedy known sexual harassment.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 29.**

30. The ongoing discriminatory harassment Plaintiff experienced as an employee of Defendant was so intolerable that it caused Plaintiff to resign.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 30.**

31. A reasonable person faced with the same discriminatory harassment would have resigned.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 31.**

32. The ongoing and pervasive harassment caused plaintiff significant emotional distress, anxiety, and depression which manifested as, *inter alia*, headaches, lightheadedness, dizziness, rapid heartbeats, body aches, panic attacks, night terrors, memory problems, and sleep disorders.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 32.**

33. Plaintiff continues to suffer from the emotional and psychological effects of the discriminatory harassment she suffered during her employment with Rightsize.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 33.**

34. Defendant's employees, including Awtry, did not seek medical attention for the injuries Plaintiff suffered on or about June 2, 2022 when she hit her head and was rendered unconscious at a company event.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 34.**

35. Defendant's employees failed to seek medical attention because of Plaintiff's status as a female and Awtry's desire to utilize her unconscious state as an opportunity to perform unwanted sex acts on Plaintiff.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 35.**

36. Rather than seek medical attention, Rightsize's employees sought to cover up and hide Plaintiff's injuries.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 36.**

37. The decision to cover up and hide plaintiff's injuries was due to her status as a female and the need to cover up Awtry's performance of unwanted sex acts on her while injured and unconscious.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 37.**

38. The failure to seek medical attention resulted in the aggravation of Plaintiff's injuries.

**ANSWER: Defendants deny the allegations and conclusions in Paragraph 38.**

39. Plaintiff suffered severe brain trauma, for which she needs ongoing medical treatment.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 and, therefore, deny them.**

40. Plaintiff's injuries have resulted in severe neurological problems, from which Plaintiff may not fully recover.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 and, therefore, deny them.**

## COUNT TWO
### *Criminal Sexual Assault in Violation of Michigan Law*
### *AWTRY*

41. Plaintiff realleges paragraphs 1-38 as though fully set forth herein.

**ANSWER: In response to Paragraph 41, Defendants repeat and reaffirm each and every response to Paragraphs 1-38 as if set forth fully herein.**

42. On or about June 3, 2023, Defendant Awtry engaged in sexual penetration, as defined in MCL § 750.520a(r) while Plaintiff was unconscious and unable to consent.

**ANSWER: Defendants deny the allegations in Paragraph 42.**

43. Plaintiff was mentally incapable, mentally incapacitated, and physically helpless at the time of the sexual penetration.

**ANSWER: Defendants deny the allegations in Paragraph 43.**

44. Defendant Awtry knew Plaintiff was mentally incapable, mentally incapacitated, or physically helpless.

**ANSWER: Defendants deny the allegations in Paragraph 44.**

45. Defendant Awtry's conduct caused personal injury to Plaintiff in the form of bodily injury and mental anguish.

**ANSWER: Defendants deny the allegations in Paragraph 45.**

46. Defendant Awtry was abetted by other employees of Rightsize, who assisted Defendant Awtry in covering up his conduct and refused to answer questions about how Plaintiff returned to the hotel or whether Defendant Awtry was present.

**ANSWER: Defendants deny the allegations in Paragraph 46.**

47. Defendant Awtry is civilly liable for criminal sexual assault under Michigan law.

**ANSWER: Defendants deny the allegations in Paragraph 47.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1. Plaintiff voluntarily resigned from her employment with Rightsize Facility Performance of Illinois, LLC.

### Second Affirmative Defense

2. To the extent that Plaintiff is seeking to recover damages for her alleged personal and physical injuries, any such alleged damages are not recoverable under Title VII.

**Third Affirmative Defense**

3. To the extent that Plaintiff is seeking to recover damages for her alleged personal and physical injuries, her claims lack causation for any such alleged damages.

**Fourth Affirmative Defense**

4. To the extent that Plaintiff is not actively looking for new employment, failed to timely look for new employment after her voluntary resignation, or failed to accept any offer of employment, then Plaintiff's damages, if any, are either barred or subject to reduction due to her failure to mitigate her damages.

**Fifth Affirmative Defense**

5. Rightsize Facility Performance of Illinois, LLC exercised reasonable care to prevent and correct any harassing conduct in the workplace, and Plaintiff unreasonably failed to take advantage of opportunities provided by Rightsize Facility Performance of Illinois, LLC to prevent or correct harassment, or otherwise avoid harm.

**Sixth Affirmative Defense**

6. Plaintiff is not entitled to punitive damages because Rightsize Facility Performance of Illinois, LLC acted in good faith to comply with the requirements of Title VII and all other applicable laws.

**Seventh Affirmative Defense**

7. Defendants reserve and do not waive their rights to raise and assert such further Affirmative Defenses as may be revealed by the evidence produced as this case proceeds.

Respectfully submitted:

*/s/ Steven J. Molitor Jr.*
One of Defendants' Attorneys

Ryan T. Benson (ARDC No. 6312338)
Steven J. Molitor, Jr. (ARDC No. 6317574)
O'Hagan Meyer LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Telephone: 312.422.6100
Facsimile: 312.422.6110
rbenson@ohaganmeyer.com
smolitor@ohaganmeyer.com

## CERTIFICATE OF SERVICE

This is to certify that on this 17th Day of June, 2025, I electronically filed ***Defendants' Answer and Affirmative Defenses to Plaintiff's Amended Complaint*** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**ATTORNEY FOR PLAINTIFF:**

Beau B. Brindley
Edward McDavid
Law Offices of Beau B. Brindley
53 W. Jackson Blvd, Suite 1410
Chicago, Illinois 60604
bbbrindley@gmail.com
edward.mcdavid@outlook.com

*/s/ Steven J. Molitor Jr.*

Ryan T. Benson (ARDC No. 6312338)
Steven J. Molitor, Jr. (ARDC No. 6317574)
O'Hagan Meyer LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Telephone: 312.422.6100
Facsimile: 312.422.6110
rbenson@ohaganmeyer.com
smolitor@ohaganmeyer.com