# Exhibit B

4683 7549R 4350P 4351RP 4215R 4210F 4676R 150,000 4406

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

Judge Pamela E. Loza
AUG 0 1 2017
Circuit Court-2004

| | | |
|---|---|---|
| In re the Parentage of C.D.A. a minor | ) | |
| | ) | |
| EMILY MACKIE, | ) | |
| Petitioner, | ) | |
| | ) | No. 14D 080196 |
| MASON AWTRY, | ) | Calendar 99 |
| Respondent. | ) | |

Circuit Court-2004
AUG 0 1 2017
Judge Pamela E. Loza

**MEMORANDUM AND JUDGMENT FOR ALLOCATION OF PARENTAL RESPONSIBILITY AND TIME**

THIS MATTER coming on to be heard on the Petitioner, EMILY MACKIE'S Petition for Sole Allocation of Parental Responsibility and Time pursuant to 750 *ILCS* 5/602 et. seq. and 750 *ILCS* 603.10 and the establishment of permanent child support and child care costs pursuant to 750 *ILCS* 5/505 et. seq., an Amended Petition for a Plenary Order of Protection against Respondent pursuant to the Domestic Violence Act at 750 *ILCS* 60 et. seq. filed on February 1, 2017 and Petition to find Respondent in indirect civil contempt of court for his failure to abide by the November 16, 2016 order of court obligating him to pay $5,268.25 to the Au Pair Agency within seven days and a Second Emergency Petition for Interim Fees which was heard on the day immediately following closing argument in this cause. Petitioner is represented by Megan Mathias and Stephanie Stinton of Stahl Cowan Crowley Addis LLC. and Denice Wolf Markham of Life Span Center for Legal Services. The Respondent, MASON AWTRY is seeking the sole Allocation of Parental Responsibility and Time pursuant to 750 *ILCS* 5/602 et seq. Respondent is represented by Jason G. Adess and Lauren G. Roth of Berger/Schatz. The parties' minor child,



Page 1 of 66

COOPER DRAKE AWTRY, is represented by Jacqueline J. Torshen of Torshen Law Group LLC. in the capacity of Guardian Ad Litem.

This court heard testimony regarding the allocation of parental responsibility and time as well as the setting of permanent child support. The court has had the opportunity to review all admitted stipulations and exhibits, observe the demeanor of the parties and the witnesses, reflect on the arguments of counsel and apply the relevant statutes of the Illinois Marriage and Dissolution of Marriage Act as well as the Illinois Parentage Act. The fact that particular testimony or exhibits are not mentioned herein does not mean this court did not consider them.

**STATEMENT OF FACTS**

The parties were involved in a continuous, intimate relationship and as a result of that relationship Cooper Drake Awtry was born on August 21, 2012, and on August 22, 2012, the parties signed the Voluntary Acknowledgment of Paternity. Petitioner contends that Respondent has a history of being physically and mentally abusive to her, Cooper and her minor children from her prior marriage. Emily considers Mason's conduct to have an adverse impact on her as well as her children. She testified that throughout their relationship Mason abused alcohol, prescription medication, marijuana and other illegal drugs. She alleges that Mason's drugs and drug paraphernalia have been left out and found by Cooper and that contrary to a court order Mason continues to abuse alcohol and illegal drugs at his business and at his home and even when Cooper is present. Emily is self- employed as an interior designer and owner of Inspired Interiors. The evidence has shown that Emily has been the primary caretaker of Cooper

throughout his young life. In addition to Cooper, Emily has two other children from a prior marriage, Pierce, age 12, and Vivian, age 10, who reside with Cooper at Emily's current residence located in Wilmette Illinois. Since 2010 when Emily and Carl Norris, the father of Vivian and Pierce, dissolved their marriage, Mackie has lived at several different residences. Emily frequently takes her children on road trips and considers the travel a family tradition. She testified to Cooper's close relationship with her other children. Emily uses an au pair agency to help care for the children since she works Monday through Friday for her company. Mackie testified to her financial uncertainty and the possibility of relocating to a less expensive neighborhood in Chicago. Notwithstanding a potential move, Emily desires Cooper to attend Ramona Elementary School in Wilmette, Illinois, with Vivian and Pierce. Emily contends that Mason uses Right Size Facility Performance LLC and its subsidiary companies as his own bank and that his salary is significantly greater than what is stated in his Financial Affidavit dated April 28, 2017 (RX236) and that child support should be significantly increased.

Mason and Cooper embrace an activity-oriented relationship, which includes: camping, reading games, and puzzles. Awtry provides Cooper's wardrobe when the minor child resides with his father. Mr. Awtry sold his house on Oakley in Chicago, where he and Emily resided and relocated to Northfield, Illinois, in the summer of 2015. Similar to Ms. Mackie, Mason Awtry has another child from a previous relationship. Ruby, Mason's ten-year-old daughter, resides with her biological mother, Marnie Beilin, and the couple have an agreed order of joint parental responsibility and time. Ruby also attends Avoca Elementary School which also feeds in to the New Trier School District, where Awtry resides. Cooper is almost five years-old and will start kindergarten this fall. Mason is the majority shareholder of Right Size Facility Performance of

Illinois LLC. Under the umbrella of Right Size Facility Performance of Illinois LLC are subsidiary companies, to wit: Right Size Facility Performance of Illinois LP, Right Size Facility Performance of Wisconsin LP and Right Size Facility Performance of Michigan LP.

After Mackie and Awtry separated, their ability to coexist for Cooper's best interest faded. For instance, In October 2014, Mason placed a tracking device on Emily's car and obtained an investigative report of her whereabouts (PEX86). Mr. Awtry did not notify Emily of the tracking device, and he testified to acquiring the report to identify the actual amount of time Mackie spent at her house, as a response to Mackie's initial Order of Protection. Emily discovered that Mason had placed the tracking device on her vehicle for about 10 days well after it had been removed.

The court has taken judicial notice of the fact that since the filing of the parentage action on September 4, 2014 there were two actions filed for copyright infringement in the Northern District of Illinois- Eastern Division in which the parties are still litigating those causes, Case No. 14-cv-09206. Petitioner and her company, to wit: Inspired Interiors, Inc. are currently suing Respondent. Mackie and Inspired Interiors allege that Awtry and Mays acquired the domain name inspiredinteriors.com and posted on it, *inter alia*, "Find Out the Truth About Emily Mackie...liar, cheater" SAC 28-36. The website also allegedly stated that Mackie was "adulterous" and promised to "reveal the truth about her". (Id. 33,37. Awtry was allegedly aware that Mackie wanted to acquire the inspiredinteriors.com domain name and purchased same. Respondent filed an action in United States District Court (PX243) in the Northern District of California under a case entitled Mason Awtry, Plaintiff vs. Glassdoor, Inc., Defendant under

docket number 16mc-80028-JCS in the Federal Court for the Northern District of California and brought a motion to compel Glassdoor, Inc. to disclose the identities of individuals who posted certain anonymous reviews on its website. Awtry's Motion was denied.

Petitioner called Griselle Feliciano to testify as an adverse witness. Ms. Feliciano testified that she is an employee of Right Size. She started in the cleaning department, then marketing department and now she was employed as a showroom concierge. She babysat Cooper less than a dozen times after Emily moved out of the Awtry residence through 2016. Mason was present all but two times when she helped care for Cooper. She testified that Awtry has never said anything to her about or has asked her to pick up drugs for him. She testified that Awtry was a very loving and hands-on father.

Jacqueline Torshen, the Guardian Ad Litem testified twice this case, in February 2017 and June 2017. She met with Emily two times and Mason once. She has reviewed every pleading with respect to the allocation issue, reviewed all Talking Parents transcripts, spoke with both counsel, attended the court proceedings, saw Cooper and reviewed the 604.10(b) report that was prepared by Dr. Ravitz (Px2). Emily Mackie resides in Wilmette and Mason in Northfield. Initially, Ms. Torshen testified that if Emily continues to reside in her current neighborhood Cooper should attend the public school closest to her home. If Emily moves then the parties should decide together where Cooper should attend school. Mackie filed a notice of intent to relocate, but that notice has not been acted. The GAL also testified that while Emily is Roman Catholic and Mason of the Jewish faith, they should each have a right to expose Cooper to their own religion. Ms. Torshen testified that all ordinary medical decisions should be made

by Emily, mental health decisions be made jointly. Ms. Torshen believes that Cooper does not need mental health therapy. Previously Dr. Ravitz reported that Cooper, when he was 2 ½ year old, was having separation anxiety from Emily. However, in preparation of trial, Ms. Torshen spoke to Cooper's teachers and they relayed to her, based on their everyday interactions with him that he no longer has separation anxiety from Emily and see him as a normal, well-adjusted child. Ms. Torshen also testified that she spoke to Dr. Ravitz, who was adamant about the appointment of a Parenting Coordinator in this case due to the animosity of the parties.

Claudia Vega, Mason's girlfriend testified. During Memorial Day Weekend, Claudia, Mason, Ruby and Cooper spent 4 days in Mason's camper. Also, she testified that last New Year's Eve weekend when her parents were in town both they and Claudia stayed at Mason's for two nights. Cooper was present, but he slept in bed with Mason. She stated that on Memorial Day Weekend Mason "sipped" some alcohol only after Cooper fell asleep. Previously, this court entered an order prohibiting the consumption of alcohol during parenting time. Claudia testified to occasionally witnessing Mason ingest marijuana inside his residence, but never when Cooper was present.

Judith Simon, an employee of Emily's at Inspired Interiors testified. She is employed as a bookkeeper. Her job duties include reconciling all accounts, payroll and client research, paying sales tax, reviewing the client contracts and dealing with accounts payable and accounts receivable. She testified that in 2016 Emily's salary was $55,000. Ms. Simon stated Inspired Interiors is incapable of paying her more than $55,000 given the company's recent lack of financial growth. In November 2016, the company accrued a cash flow problem and sold the

ons/#/AABDD59E0ED89B58A68EC44E25E0DFABBC3151C1AFDF5F96ED0231EA66F20BFBF59725434712BD52EB986F69061F502C32565715€

Toyota Highlander to pay outstanding invoices. Inspired Interiors experienced a net loss from September 1, 2016 through December 7, 2016, however the income statements are missing reports in October and December. Moreover, Emily received a cost of living loan from the corporation in the amount of $28,354.45 in 2016, and she currently owes the corporation $57,638.14. Ms. Simon classifies au pair, rent, Cooper's clothes, and personal item expenses within the cost of living loan. Inspired Interiors made several au pair payments on behalf of Emily. A loan for the repair Mackie's Hartzell, Wilmette property was also reflected during Simon's testimony. In 2016, Ms. Simon testified that Emily spent between $44,000-$50,000 in attorneys' fees payable to Stahl Cowan Crowley Addis LLC. as the result of the copyright infringement suits filed in federal court. Of the total amount paid, 10-20% was for other corporate matters not related to the parties.

Tom Castelvecchi was called by Attorney Mathias as an adverse witness. He is employed as the Comptroller for Right Size Facility Performance of Illinois, LP which is one of the corporations under Right Size Performance LLC. He does no financial work for Right Size Performance LLC. His duties include Human Resources, hiring and firing employees, employee complaints, preparing financial package for the CEO to review, profit and loss statements and preparing the year end statement for the company. Right Size provides blended solutions that sells new, used or blended furniture. Castelvecchi works at Right Size's warehouse location on Roosevelt Road in Cicero, Illinois. Right Size also occupies a downtown Chicago sales office, while the Wisconsin and Michigan LLCs have their own sales offices. Except for the Roosevelt location, all other Right Size structures have leases. Castelvecchi testified that there is a small cash component to Right Size of Illinois, but he and Mason are the only employees who are

capable of accessing the safe. There is currently less than $2,000 in the company safe. The scrape metal the company receives and sells, generally cash, comprises less than .1% of its revenue.

Mason gives Castelvecchi his credit card statements with a description of the project on the spread sheet and then Castelvecchi pays the bill. He has never objected to paying a credit card statement from Mason. He also stated that he does not have the discretion to challenge what Mason considers to be a business expense. Routinely purchases from Binny's, Jewel Osco and restaurants near Mason's residence are approved. Expenses have also been permitted for a gambling casinos and a "Gentlemen's Club." Mason drives an Acura, paid for by the company, his insurance is paid for by the company as well as his other auto-related expenses.

Joanne Dimond, an employee of Cultural Care Au Pair was called to testify by Ms. Mackie. Cultural Care Au Pair is a cultural exchange for au pairs throughout the world and provides up to 45 hours of child care a week. Ms. Diamond is the support system for assigned au pairs and provides year-round assistance to ensure the support family is staying within bounds of the U.S. State Department rules. She also has monthly meetings with all her au pairs to provide proper aid. The au pair contract is generally for one year with a maximum tenure of 2 years. The family also agrees to the contract and is required to pay a stipend of $196 per week for the au pair. Marianne De Silva Freitas arrived at the Mackie home, through Cultural Care Au Pair, as a nanny in April 2015. Ms. Freitas stayed slightly over one year and cared for Emily's three children. The two older children were in school, so Cooper was the au pair's primary focus. Ms. Dimond testified that in the late fall and early winter of 2015, she started